IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| RICARDO NOBLE, )<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>JOHN WETZEL, SECRETARY OF PA )<br>D.O.C.; ROBERT GILMORE, SCI GREENE<br>SUPERINTENDENT; and STEVE<br>LONGSTRETH, SCI GREENE PRISON<br>COUNSELOR; | 2:18-CV-01160-MJH |

Defendants,

**MEMORANDUM ORDER**

This case has been referred to United States Chief Magistrate Judge Cynthia Reed Eddy for pretrial proceedings in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72 of the Local Rules for Magistrate Judges.

On November 16, 2021, the Magistrate Judge issued a Report and Recommendation, (ECF No. 220), recommending that Defendants' Motion for Summary Judgment (ECF No. 193) be granted, and that this case be dismissed with prejudice.

The parties were advised that written objections to the Report and Recommendation were due by November 30, 2021, and for non-ECF filers, such as Plaintiff, Objections were due by December 3, 2021. Plaintiff timely mailed Objections, which were filed on the docket on December 2, 2021. (ECF No. 222). Any response to those objections were due December 17, 2021; however, none was filed. Following *de novo* review, Judge Eddy's Report and

Recommendation will be adopted, and Defendants' Motion for Summary Judgment will be granted.[1]

I.   Background

Relevant to the Court's review of the Report and Recommendation, Mr. Noble had three remaining claims:  1. Eighth Amendment Conditions of Confinement; 2.  Free Exercise of Religion under the First Amendment/Religious Land Use and Institutionalized Persons Act (RLUIPA); and 3. Conspiracy.

Mr. Noble's claims arise from his incarceration at SCI Greene, where he was serving a term of forty years to life imprisonment following a conviction for second-degree murder. "Plaintiff is a sincere adherent of the Nation of Gods and Earths ('NGE'), commonly called, 'The 5%. [(also referred to as 'NGE(5%)')]." (ECF No. 214 at p. 1).   From about 2001 to 2013, Mr. Noble was confined in the Restricted Housing Unit (RHU).  (ECF No. 195 at ¶ 5).   Mr. Noble characterizes RHU as solitary confinement.  (ECF No. 215 at ¶ 5).

In March 2013, Mr. Noble was released from RHU and entered the general population. (ECF No. 215).  On August 8, 2014, Defendants assert, but Mr. Noble denies, that he violently assaulted a unit manager.  (ECF No. 195 at ¶ 16; ECF No. 215 at ¶ 16).  From this incident, Mr. Noble was sentenced to 450 days of disciplinary custody.  *Id*. On October 22, 2014, it was recommended that Plaintiff be placed on the Restrictive Release List ("RRL") due to his history of "3 assaults on staff and 2 assaults on inmates which has resulted in both the inmates and staff needing outside hospital treatment."  *Id*. at ¶ 18.  Defendants assert, but Mr. Noble denies, that the assaults that occurred between 2003 and 2006 were believed to be "gang related."  *Id*. at ¶ 19.  In

---

[1] Rule 72 of the Federal Rules of Civil Procedure provides in pertinent part: "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

2015, Defendants placed Mr. Noble on RRL. *Id*. at ¶ 23. Mr. Noble contends that he was placed on RRL because he had been falsely classified as a member of a Security Threat Group (STG). (ECF No. 215 at ¶ 23). He further maintains that Defendants classified him as STG because he is a member of NGE and that while, NGE is not designated a STG by the Department of Corrections, it has been used to "keep Plaintiff in solitary confinement for excessive/unreasonable amounts of time in past and present, and to confiscate/ban NGE(5%) material." (ECF No. 214 at pp. 2-3).

On February 12, 2018, Mr. Noble submitted a grievance to the Department of Corrections with regard to his assertion that he has been falsely classified as STG since at least 2013 because he is NGE. (ECF No. 216-3 at p. 1). On March 8, 2018, Defendant Longstreth denied the grievance and provided the following:

> I am in receipt of your grievance and assigned to investigate your concerns. On 1/25/2018 you received a legal packet containing an [Integrated Case Summary ("ICS")] document from 2/26/13. You received this information as part of your juvenile lifer packet. You are concerned it referred to you as having STG status based on affiliation with the 5 percenters. It is your belief this may hurt your case as a juvenile lifer. Since the 5 percenters are not tracked as a STG you feel this was written to slander you violating DOC policy and your constitutional rights. In your relief you request this false statement against you be removed, and 2 million dollars in monetary relief.
>
> Mr. Noble I have reviewed the 2/26/13 ICS document that you reference in your grievance. The portion of the ICS that indicates STG activity is a summary of your separations. Three institutions found basis to separate you due to your activities with the 5 percenters. It is your belief the 5 percenters are not a tracked STG in the DOC. Your actions were of a severity, in coordination with the 5 percenters that it led to a transfer. Whether a group is tracked as STG or not, if your involvement leads to a separation it will be documented.
>
> In conclusion, your separations reference your actions in coordination with the 5 percenters that led to separations from 3 institutions. It is not against DOC policy or a violation of your rights for the DOC to document security related incidents or concerns.

*Id*. at p. 2.

Mr. Noble appealed the denial of his grievance, and on April 9, 2018, Defendant Gilmore upheld the decision. *Id*. at 4. Finally, this grievance was upheld again on July 13, 2018.

II.     Discussion

A.  Eighth Amendment Conditions of Confinement Claim

In their Motion for Summary Judgment, Defendants contended that Mr. Noble's Eight Amendment Conditions of Confinement claim should be dismissed because "[Mr. Noble] failed to introduce any evidence as to any extreme deprivation for constitutional purposes or that he was otherwise denied any basic necessities of human existence." (ECF No. 194).  Mr. Noble argued that he has suffered negative mental and physical effects, which he attributes to "[D]efendants using the knowingly false STG classification of Plaintiff because he is NGE(5%) to heighten Plaintiff's security risk status/restrictions." (ECF No. 214 at p. 6).  He also contended that the amount of time he has been in the RHU and his placement on the RRL violate the Eighth Amendment. *Id*.

In determining whether  prison officials have violated the Eighth Amendment, the Third Circuit applies two-prong test with one objective prong and one subjective prong. Under the objective prong, "the deprivation must be objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Under the subjective prong, "the prison official must have been deliberate[ly] indifferen[t] to inmate health or safety." *Id*.  "An official is deliberately indifferent if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Id*. "Whether conditions constitute cruel and unusual punishment is measured against the evolving standards of decency that mark the progress of a maturing society." *Id*. (internal

4

citations and quotation marks omitted). In addition, the Court "may also consider whether officials had a legitimate penological purpose behind their conduct. The Eighth Amendment prohibits punishments without penological justification." *Id*. (internal citations and quotation marks omitted).

    1. Objective prong

To satisfy the objective prong, "an inmate need not provide evidence of actual injury. We have specifically held that the inmate need only offer evidence that there was a 'substantial risk of serious harm.'" *Id*. "It is well established in both case law and scientific and medical research that prolonged solitary confinement … poses a substantial risk of serious psychological and physical harm." *Id*. In *Porter*, the Third Circuit held that the consensus of medical evidence regarding prolonged solitary confinement "makes plain that a reasonable jury could conclude that thirtythree years in solitary confinement posted a substantial risk of harm to Porter." *Id*. at 443; *see also Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017) (acknowledging "the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement").

Here, Judge Eddy recommended that a jury could conclude that Mr. Noble's nearly 20 years of solitary confinement satisfied the objective Eighth Amendment standard with respect to "the denial of the minimal civilized measure of life's necessities." *Porter*, 974 F.3d at 441.  The parties did not object to Judge Eddy's recommendation as to the objective prong.  Therefore, following de novo review, the Court concurs with Judge Eddy's well-reasoned Report and Recommendation that a reasonable jury could find that Mr. Noble could support the objective prong of his Eighth Amendment claim.  This Court finds no error in Judge Eddy's determination.

2. Subjective Prong

Turning now to the subjective prong of the test, "an inmate must show that the prison official knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Porter*, 974 F.3d at 446 (internal citations and quotation marks omitted). Further, in the context of medical care and/or psychological care, case law recognizes an additional two prong inquiry. In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In order to establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

As regards the first prong, a serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*

As regards the second prong, deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer v.*

6

*Brennan*, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842).

Here, Judge Eddy recommended that Defendants' motion for summary judgment be granted, and Mr. Noble's Eighth Amendment claim be dismissed with prejudice because there were no genuine issues of material fact with regard to the subjective prong.   Specifically, Judge Eddy noted that Mr. Noble had not alleged or put forward any evidence that prison officials were aware of particular risks to Mr. Noble and then disregarded those risks.  Furthermore, Judge Eddy noted that Defendants came forward with ample to evidence to demonstrate that Mr. Noble had assaulted both inmates and staff, and it is those instances that have led to Plaintiff's confinement in the RHU and placement on the RRL. Accordingly, Judge Eddy found that Defendants have set forth ample evidence regarding the rationale for Plaintiff's continued confinement in the RHU, specifically his assaults on inmates and staff that have resulted in their receiving medical treatment. Instead, she held that Plaintiff merely continues to allege that his confinement in the RHU and placement on the RRL are in retaliation for his adherence to NGE(5%).

In his objections, Mr. Noble contends that he has alleged and submitted ample evidence that Defendants were aware of particular risks to him from prolonged solitary confinement and then disregarded those risks.   In particular, Mr. Noble asserts that, as a result of prolonged solitary confinement, from long periods of inactivity, and from a 24-hour cell light, he suffered from anxiety, depression, intrusive thoughts, and neck and back pain.  He further directs the

Court to exhibits where he complained to prison officials and instance where he sought the appointment of a psychologist. (ECF Nos. 216-50 through 216-52).

Mr. Noble's contentions, that he suffered from various ailments due to his confinement in the RHU, cite only conclusory statements. For example, he has argued that because other inmates, who were subjected to long-term confinement suffered from psychological and physical trauma, "it's highly likely and expected for Plaintiff to have experienced/experience some of the same negative mental and physical effects of solitary confinement." (ECF 214 at p. 11). Nowhere in the record does Mr. Noble produce competent and admissible evidence that he suffered from a serious medical need that required a physician's or psychologist's attention. The exhibits produced by Mr. Noble do not satisfy this burden, as they only offer self-serving assertions without requisite testimony by someone who could identify a serious medical need that Defendants failed to address.

Therefore, following de novo review, the Court concurs with Judge Eddy's well-reasoned Report and Recommendation that no reasonable jury could find that Mr. Noble could support a the subjective prong of his Eighth Amendment claim. This Court finds no error in Judge Eddy's determination.

Accordingly, Defendants Motion for Summary Judgment, as regards Mr. Noble's Eighth Amendment claim, will be granted.

B. First Amendment/RLUIPA Claim

In their Motion for Summary Judgment, Defendants argued that Mr. Noble's claims pursuant to the Free Exercise clause of the First Amendment and RLUIPA should be dismissed with prejudice because Mr. Noble's claims related to the confiscation of books and other NGE-related material are time-barred. Defendants also contended that Mr. Noble failed to adduce

evidence that he is unable to practice NGE due to his confinement in the RHU or placement on the RRL.

1. First Amendment Claim

Mr. Noble contends that Defendants confiscated any NGE(5%) material because they gave NGE(5%) "the false and retaliatory STG classification." (ECF No. 214 at p. 15). Mr. Noble maintained that he has ceased seeking NGE(5%) materials because it would be "absurd and futile" unless Defendants "clearly remove the false STG classification. *Id*. at p. 16. He also argues that he is not able to participate in "group viewing of audio/visual resources" related to NGE(5%) due to his being in the RHU. *Id*. at p. 17.

It is well settled that "[i]nmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion." *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000). "Nevertheless, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." *Id*. at 50-51. "Thus, a prison inmate retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id*. at 51 (internal quotation marks omitted).

To determine whether a regulation infringing upon constitutional rights is reasonable, courts apply the four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). Under *Turner*, the court weighs the following factors in assessing the overall reasonableness of a prison regulation: "whether the regulation has a 'valid, rational connection' to a legitimate government interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmate and prison resources; and whether

there are any 'ready alternatives' to the regulation." *Overton v. Bazzetta*, 539 U.S. 12 126, 132 (2003) (quoting *Turner*, 482 U.S. at 89-91); *see also Fraise v. Terhune*, 283 F.3d 506, 513-14 (3d Cir. 2002). "'[T]he burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003).

Here, Judge Eddy recommended dismissal of Mr. Noble's First Amendment Claim because did not assert that any prison regulations prevented him from practicing his religion. Further, the Report and Recommendation notes that Mr. Noble's sole contention on this ground was due to a false STG classification and that Defendants have proffered evidence that NGE is not currently classified as an STG.  Moreover, Mr. Noble's classification as a member of an STG was due instead to his repeated assaults towards inmates.   Judge Eddy concluded that Mr. Noble failed to demonstrate that the Department of Corrections had any policy or regulation that infringed on his constitutional right to freely practice his religion.

Upon review of Mr. Noble's Objections, they simply rehash his arguments in opposition to Defendants' Motion for Summary Judgment.   Mr. Noble's Objections appear, in part, to center on Judge Eddy's use of the terms "Department of Corrections" versus "SCI-Greene." Such distinction is immaterial to the issue of whether Mr. Noble's First Amendment rights were violated under his allegations.  Mr. Noble produces no evidence that Defendants denied him any opportunities to practice the tenets of NGE(5%).  Instead, in his objections, Mr. Noble rests on his First Amended Complaint and "pleadings." (ECF No. 222 at p. 14). The non-movant "may not rest upon mere allegations, general denials, or ... vague statements."

*Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.,* 311 F.3d 226, 233 (3d Cir. 2002). In short, Mr. Noble's objections rehash his prior arguments, and the Court therefore incorporates herein the same reasons and analysis used by Judge Eddy in her Report and Recommendation. *See Luckett, Jr. v. Folino*, 2010 WL 3806822, at *1 (M.D. Pa. Sept. 23, 2010) (rejecting petitioner's objections because they sought "to re-litigate issues already considered and rejected by Magistrate Judge").

Therefore, following de novo review, the Court concurs with Judge Eddy's well-reasoned Report and Recommendation that no reasonable jury could find that Mr. Noble could support his First Amendment claim. This Court finds no error in Judge Eddy's determination.

Accordingly, Defendants' Motion for Summary Judgment, as regards Mr. Noble's First Amendment claim, will be granted.

2. RLUIPA

In addition to First Amendment guarantees, "[i]ncarcerated persons enjoy a statutory right to follow the religious teachings and practices of their choice." *Williams v. Bitner*, 359 F. Supp. 2d 370, 375 (M.D. Pa. 2005), *aff'd in part, remanded in part*, 455 F.3d 186 (3d Cir. 2006). No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc–1(a). "A burden is 'substantial' when it 'influences the adherent to act in a way that violates his [sincerely held] religious beliefs.'" *Williams*, 359 F. Supp. 2d at 375.

11

In recommending granting Defendants' Motion for Summary Judgment with respect to Mr. Noble's RLUIPA claim, Judge Eddy noted that Mr. Noble had not identified any Department of Corrections regulation or policy that restricts the ability of an adherent to NGE(5%) to practice the religion. Further, Judge Eddy explained that Mr. Noble had not come forward with adequate evidence to support his claims that he is being unconstitutionally prevented from practicing NGE(5%).

As above, Mr. Noble reiterates his arguments in opposition to Defendants' Motion for Summary Judgment, which this Court could reject outright. *See Luckett, Jr., supra.* Nevertheless, the Court will review his objections and address each in turn. Mr. Noble points to a grievance he filed in 2015. Therein, he requested a number of accommodations, including the ability "to receive and possess [NGE] books." (ECF No. 216-25 at p. 3). However, the record reflects that Defendants granted his accommodations; thus, Mr. Noble's contention, that Defendants denied his ability to practice his religion, is not supported. *Id*.

Finally, Mr. Noble contends that Defendants placed a substantial burden on his ability to practice NGE through his placement in RHU thereby preventing him from participating in NGE-group related activities. However, Mr. Noble presented no evidence in support of this claim, namely, the record does not indicate what, if any, accommodations were requested by Plaintiff, and whether those accommodations were denied. *See* 42 U.S.C. § 1977e (providing that inmates must exhaust administrative remedies prior to filing a lawsuit in federal court); *Payne v. Kabilko*, 2018 WL 2771583, (M.D. Pa. Apr. 17, 2018). In addition, Mr. Noble does not address potential compelling government interests in placing him in the RHU due to prior violent incidents with inmates and staff. Instead, Mr. Noble's objections continue to conflate his STG

classification and identification as a member of NGE(5%). However, the record, as presented to both Judge Eddy and this Court, does not constitute any violation of RLUIPA by Defendants.

Therefore, following de novo review, the Court concurs with Judge Eddy's well-reasoned Report and Recommendation that no reasonable jury could find that Mr. Noble could support his RLUIPA claim. This Court finds no error in Judge Eddy's determination.

Accordingly, Defendants' Motion for Summary Judgment, as regards Mr. Noble's RLUIPA claim, will be granted.

C. Conspiracy

"In order to prevail on a conspiracy claim under § 1983, [a plaintiff] must prove that persons acting under color of state law conspired to deprive [him or her] of a federally protected right." *Martin v. Unknown U.S. Marshals*, 965 F. Supp. 2d 502, 547 (D.N.J. 2013), aff'd sub nom., 649 F. App'x 239 (3d Cir. 2016). "The grant of summary judgment is proper on such a claim where a plaintiff cannot establish an underlying violation of any constitutional rights." *Id*.

Judge Eddy recommended that summary judgment should be granted with respect to Plaintiff's Eighth Amendment and First Amendment/RUILPA claims. Accordingly, Judge Eddy also recommended that summary judgment should be granted as to conspiracy because Mr. Noble failed to establish an underlying constitutional violation. *See id*. Mr. Noble objects for the same reasons above, and as this Court agrees with Judge Eddy's recommendations as regard the Eighth Amendment and First Amendment claims, this Court concurs that Mr. Noble cannot support a conspiracy claim in absence of an underlying constitutional violation.

Therefore, following de novo review, the Court concurs with Judge Eddy's well-reasoned Report and Recommendation that no reasonable jury could find that Mr. Noble could support his Conspiracy claim. This Court finds no error in Judge Eddy's determination.

Accordingly, Defendants' Motion for Summary Judgment, as regards Mr. Noble's Conspiracy claim, will be granted.

III.   Conclusion

Accordingly, after *de novo* review of the pleadings and the documents in the case, together with the Report and Recommendation, the following order is entered:

AND NOW, this 23rd day of December, 2021, it is hereby ORDERED as follows:

The Magistrate Judge's Report and Recommendation (ECF No. 220), dated November 16, 2021, will be adopted as the Opinion of the Court.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (ECF No. 193), will be GRANTED.   Mr. Noble's case will be dismissed.   A separate order will be issued.

By the Court:

_____
Marilyn J. Horan
United States District Judge

cc:   Ricardo Noble
     BX-9351
     SCI Houtzdale
     P.O. Box 1000
     Houtzdale, PA 16698